**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DION A. ANDERSON

     Petitioner,

                              CASE NO. 05-CV-72499-DT
v.                            HONORABLE VICTORIA A. ROBERTS
                              UNITED STATES DISTRICT JUDGE

ANDREW JACKSON,

     Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Dion A. Anderson, ("Petitioner"), presently confined at the Mound Correctional Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for second-degree murder, M.C.L.A. 750.317; assault with intent to do great bodily harm less than murder, M.C.L.A. 750.84; and felony-firearm, M.C.L.A. 750.227b. For the reasons stated below, the application for writ of habeas corpus is **DENIED.**

**I. Background**

Petitioner was originally charged with first-degree murder, assault with intent to commit murder, and felony-firearm. Following a bench trial in the Wayne County Circuit Court, Petitioner was convicted of the lesser included offenses of second-degree murder and assault with intent to do great bodily harm and was found guilty as charged of felony-firearm. This Court recites verbatim the relevant facts regarding Petitioner's conviction

1

from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001):

> This case arises from a shooting in which two persons were injured, one fatally. Before trial, defendant moved to suppress his statements confessing to the shooting, claiming that he was coerced or otherwise tricked into signing the statements, which he asserted were fabricated by the interrogating officers. During the hearing on this motion defendant testified that after initially denying any involvement in the shooting when speaking with Officer Lonze Reynolds on the morning of November 23, 1999, he was asked to take a polygraph examination. After being told that he would be released if he passed the examination, defendant agreed to take an examination to be administered by Officer Andrew Sims. Upon completing the examination, defendant was told by Sims that he had failed the polygraph and was, therefore, considered by Sims to be "guilty." According to defendant, Sims then told him that if he did not confess to the shootings Sims would make certain that defendant never saw his children again, after which Sims wrote "something" down on a piece of paper and told defendant to sign it. When defendant protested, Sims began yelling at him and defendant signed the paper out of fear. When defendant saw Reynolds afterward, he told Reynolds that Sims made him sign something that he did not want to sign. Reynolds, however, did not seem to care.
>
> On cross-examination, defendant specifically denied writing or signing the handwritten statement indicating that he shot "Mike" after seeing him while walking up the street. Defendant claimed this statement was in fact written by Sims, who signed defendant's name after writing the statement. However, defendant acknowledged his signature on the second statement given to Reynolds later that day, but denied ever making any of the admissions contained in that statement.
>
> *People v. Anderson,* No. 236040, * 1-2 (Mich.Ct.App. June 26, 2003)(internal footnotes omitted).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 469 Mich. 1025, 679 N.W.2d 59 (2004). Petitioner now seeks the issuance of a writ of habeas corpus on the

following grounds:

> I. Whether Petitioner Anderson was deprived of his Sixth Amendment constitutional right to effective assistance of counsel guaranteed him by both the state and federal constitutions and is entitled to a new trial or an evidentiary hearing?
>
> II. Whether Petitioner was deprived of his constitutional right to a fair trial where a manifest injustice occurred where his conviction for murder and assault with intent to do great bodily harm were obtained through the use of false and perjured testimony of the interrogating police officers requiring a new trial under the Fourteenth Amendment?
>
> III. Whether Petitioner was deprived of due process and a fair trial when the trial court's failure to ascertain on the record whether Petitioner Anderson intelligently and knowingly waived his right to testify?

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

3

(2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A. Claim # 1. The ineffective assistance of counsel claims.**

Petitioner first contends that he was deprived of the effective assistance of trial counsel.

To prevail on his ineffective assistance of counsel claims, Petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

**1. Failure to obtain a handwriting expert to challenge the authenticity of Petitioner's written statement to Officer Sims**.

Petitioner first claims that trial counsel was ineffective for failing to obtain a handwriting expert in order to prove that Petitioner's first written confession to Officer Andrew Sims had not been in his own handwriting, but had been written by Sims.

4

Following his conviction, Petitioner's appellate counsel obtained the services of a handwriting expert, Rita M. Lord, who compared a Xerox copy of the written statements that Petitioner purportedly made to Officer Sims with letters that had purportedly been written by Petitioner. Ms. Lord indicated in her report that "[T]here are many factors that a Forensic Document Examiner cannot evaluate from machine copied documents. Working from photocopies, one cannot evaluate true line quality such as pressure, pen lifts, fine tremors, etc. Also copies presented to the Forensic Document Examiner for examination, may not be a true representation of the original document." Ms. Lord concluded that because of the problems with Xerox copies, she could only give a "qualified opinion"and made this opinion contingent upon an examination of the original document if and when it became available. She further reserved the right to modify her opinion at a later time should she receive such evidence. Nonetheless, Ms. Lord went on to state that it was her "qualified opinion" that she could state with a high degree of probability that the questioned document, consisting of the words "I was walking up the street and I seen this guy and I shot him." and "I was shooting at Mike," had not been written by Petitioner. [1]

In rejecting this claim, the Michigan Court of Appeals held that Petitioner was unable to show that he was prejudiced by counsel's failure to obtain the opinion of a handwriting expert, in part, because the expert opinion would only have challenged the

---

[1] Ms. Lord's report is attached to the Petition for Writ of Habeas Corpus as Exhibit C.

authenticity of the handwritten statement, without challenging Petitioner's oral admissions, as testified to by both Sims and Reynolds, as well as the more detailed second written statement, which Petitioner acknowledged signing and which he did not challenge on appeal. *People v Anderson*, Slip. Op. at * 2-3.

  There are several problems with Petitioner's claim.  First, Ms. Lord indicated that she could only give a qualified opinion concerning the handwriting contained in Petitioner's first written statement, because it was a Xeroxed copy.  Ms. Lord even acknowledged the possibility that the Xerox copies presented to her for examination might "not be a true representation of the original document."  Ms. Lord even reserved the right to modify her opinion at a later time should she receive a copy of the original document at a later time.  Because Ms. Lord could not conclusively state that the handwriting on this written statement was not Petitioner's handwriting, Petitioner was not prejudiced by counsel's failure to call Ms. Lord as an expert in handwriting analysis. *See e.g. U.S. v. Davis,* 939 F.Supp. 810, 815-16 (D. Kan. 1996)(failure to introduce laboratory report documenting results of handwriting analysis performed on letters found on defendant's person did not establish prejudice necessary to support claim of ineffective assistance of counsel, where report was inconclusive in determining whether defendant was author of letters).

  Secondly, and more importantly, the expert handwriting expert's opinion would have only called into question the issue of whether Petitioner or Officer Sims had written the first statement, but would not have necessarily called into question Petitioner's first

oral confession, which was testified to by Sims and Reynolds, nor would it have called into question Petitioner's second written statement to Reynolds. Because Petitioner's first written confession merely corroborated the oral confession that he had previously given to Officer Sims, and because Ms. Lord could not conclusively state that the handwriting on this first written statement was not Petitioner's handwriting, Petitioner was not prejudiced by counsel's failure to call a handwriting expert to challenge the authenticity of the writing on the first written statement. *Cf. United States v. Jones,* 455 F. 3d 800, 804-06 (7th Cir. 2006)(defendant failed to demonstrate that he suffered any prejudice from district court's denial of his motion for continuance of trial so that defense could obtain handwriting analysis of confession allegedly written and signed by defendant at police station, defendant's written confession merely corroborated his oral statement, Seventh Circuit could not be assured that the handwriting expert would have testified that the statement was not written by defendant, and any such testimony would in any event have been of limited value in impeaching the credibility of the police).

**2. Failure to challenge the confessions as being the fruit of an illegal arrest.**

Petitioner next contends that trial counsel was ineffective for failing to move to suppress his confessions as being the fruits of an illegal arrest. Petitioner contends that his arrest was illegal because it was based on speculation and rumors provided by an informant.

In rejecting this claim, the Michigan Court of Appeals ruled that assuming that the police lacked probable cause to arrest Petitioner for the shooting, Petitioner was properly

7

arrested for carrying a concealed weapon after he voluntarily removed a handgun from his waistband and placed it on the counter of the store where he worked in plain view of the police. Thus, there was a sufficient intervening circumstance to attenuate the taint of any illegality pertaining to Petitioner's arrest. Because there was no basis for suppression of the subject statements on the ground that Petitioner's arrest was unlawful, counsel was not ineffective in failing to seek suppression on that ground. *People v. Anderson*, Slip. Op. at * 3.

The "fruits of the poisonous tree" doctrine provides that evidence obtained following or during illegal police conduct-*e.g.*, confessions obtained during illegal custodial interrogation or consents obtained following an illegal entry-are inadmissible at trial if the statements or other evidence were obtained as a result of the prior illegality and not as a result of the accused's exercise of free will. *Florida v. Royer*, 460 U.S. 491, 501 (1983); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

However, where a court finds that an illegal arrest was followed by the seizure of evidence, a court must further determine "if the connection between the illegal police conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint' " of the illegal police conduct. *Segura v. United States,* 468 U.S. 796, 805 (1984)(internal quotation omitted). A broad "but for" relationship is not the standard for dissipation. *Wong Sun*, 371 U.S. at 487-88. Instead, courts look for a "close causal connection" between the illegality and the evidence obtained. *Dunaway v. New York*, 442 U.S. 200, 218 (1979). The taint of the illegal arrest or seizure can be removed if the

evidence is obtained from an independent source unrelated to the illegality, if the evidence would have been inevitably discovered through "clean" sources, or if circumstances demonstrate that the taint is sufficiently attenuated. *See Foster v. Withrow,* 159 F. Supp. 2d 629, 639, n. 4 (E.D. Mich. 2001)(*citing Nix v. Williams*, 467 U.S. 431 (1984), *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)).

A number of courts have held that a custodial confession following an illegal arrest does not need be suppressed if the police have uncovered evidence sufficient to establish probable cause to arrest the defendant before the challenged custodial statement was given. *See United States v. Manuel,* 706 F. 2d 908, 911 (9th Cir.1983); *United States v. Maier*, 720 F. 2d 978, 980 (8th Cir. 1983); *See also United States v. Shaw,* 464 F. 3d 615, 629, n. 10 (6th Cir. 2006).

In the present case, even if the police lacked probable cause to arrest Petitioner for the shooting when they went to speak with him at his family's store, the police had probable cause to arrest Petitioner for carrying a concealed weapon when they observed him remove a handgun from his waistband in their presence. Because there was no reasonable probability that a challenge to the admissibility of Petitioner's confession as the fruit of an unlawful arrest would have succeeded, Petitioner cannot show that he was prejudiced by counsel's failure to challenge the admission of his confession on this basis and his claim of ineffective assistance of counsel must fail. *See Foster,* 159 F. Supp. 2d at 640.

    **3. Failure to challenge the confessions as being the fruit of an unreasonable**

**delay in arraignment.**

As a related claim, Petitioner contends that trial counsel was ineffective for failing to move for the suppression of his confessions as being the result of a delay in arraignment.

Under both federal and Michigan law, any unnecessary delay in having a defendant arraigned before a magistrate or other judicial officer is insufficient, in and of itself, to justify the suppression of an otherwise voluntary confession made during the period of the prearraignment delay; instead, delay is only one of several relevant factors to be considered in determining the voluntariness of a criminal defendant's statements. *See United States v. Christopher,* 956 F. 2d 536, 538 (6th Cir. 1991); *People v. Cipriano,* 431 Mich. 315, 319; 429 N.W. 2d 781 (1988). If the totality of the circumstances indicate that a confession was voluntarily given, it should not be excluded solely because of prearraignment delay. *Cipriano,* 431 Mich. at 319.

In the present case, Petitioner has provided no facts to this Court which would lead it to believe that the confessions were involuntarily given. In this case, based on a review of the record, the totality of circumstances indicate that Petitioner's confessions were voluntary, in spite of the prearraignment delay, because there is no allegation that Petitioner was not advised of his *Miranda* warnings, and there is no evidence of intimidating police conduct, that the police interview was coercive, or that Petitioner was otherwise harassed or mistreated. *United States v. Christopher,* 956 F. 2d at 539; *See also United States v. Van Metre,* 150 F. 3d 339, 348 (4th Cir. 1998). In this case,

Petitioner does not allege that the police harmed or threatened him, subjected him to continued or relentless questioning throughout the prearraignment period, or deprived him of food or water or otherwise mistreated him. Petitioner has failed to show that the prearraignment delay rendered his confession involuntary or that he was prejudiced by counsel's failure to move to suppress the confession on this basis.

### 4. Failure to seek suppression of petitioner's confessions pursuant to *People v. Bender.*

Petitioner next claims that defense counsel was ineffective for failing to seek suppression of his statements under *People v. Bender*, 452 Mich. 594, 597; 551 N.W. 2d 71 (1996), in which the Michigan Supreme Court held that due process requires the police to inform a suspect that a retained attorney is immediately available to consult with him, and that failure to so inform a defendant before he makes an incriminating statement *per se* precludes a knowing and voluntary waiver of the rights to remain silent and to have counsel present during interrogation.

In support of his claim, Petitioner attached to his appellate court brief what is purported to be a police "case progress report," which notes that several hours before Petitioner made his first incriminating statement, Petitioner's father's attorney called the Detroit Police Department to inquire as to the basis of Petitioner's detention. However, according to this report, after being advised that Petitioner was being held on charges of carrying a concealed weapon, the attorney simply replied "okay," and did not state that he had been retained to represent Petitioner or that he wished to speak to him, nor did he

request that any police interrogation cease. [2]

The Michigan Court of Appeals concluded that since Petitioner's father's counsel never indicated that he had been retained to represent Petitioner or indicated that he wished to speak with him, the holding in *Bender* was inapplicable to the facts of his case and counsel was thus not ineffective in failing to seek suppression on that ground. *People v. Anderson,* Slip. Op. at * 5.  In light of the fact that the Michigan Court of Appeals has concluded that any motion to suppress brought pursuant to *People v. Bender* would not have succeeded as a matter of state law, Petitioner is unable to show that he was prejudiced by counsel's failure to move to suppress his statements on this basis. *See e.g. Lopez v. Greiner,* 323 F. Supp. 2d 456, 479-80 (S.D.N.Y. 2004)(state court determination that habeas petitioner was not prejudiced by counsel's failing to consider motion to suppress based on potential insufficiency of warrant application under New York law was not unreasonable application of clearly established federal law; to find petitioner had established prejudice would have required habeas court to substitute its judgment for that of state court that motion's state-law bases would not have succeeded).

**5.  Failure to rehabilitate alibi witness Joe Anderson.**

Petitioner finally claims that trial counsel was ineffective for failing to rehabilitate Petitioner's alibi witness Joe Anderson after the prosecutor attacked his credibility by obtaining an admission from Anderson that he had not gone earlier to the police with the

---

[2]  *See* Appellant's Brief on Appeal, Exhibit 2 [This Court Dkt. Entry 18-3; 18-4].

information that Petitioner was with him when the crime was committed. However, as the Michigan Court of Appeals indicated, Petitioner has offered no indication of what Anderson's answer would have been to such questioning on re-direct examination by Petitioner's counsel. *People v. Anderson,* Slip. Op. at 5-6.

In the present case, Petitioner's counsel may have failed to question Anderson either on direct or redirect examination as to his reasons for his delay in coming forward with Petitioner's alibi, because, in fact, there was no good reason for his delay in coming forward. *See Cuevas v. Henderson,* 801 F. 2d 586, 592 (2nd Cir. 1986). Moreover, the record provides no reason for this Court to believe that any unasked question would have produced an answer helpful to Petitioner's case. Therefore, counsel's failure to rehabilitate Anderson cannot provide a basis for habeas relief for Petitioner. *Id.*

### B. Claim # 2. The perjury claim.

Petitioner next claims that the prosecutor presented perjured testimony, thereby depriving him of a fair trial. Petitioner claims that Officers Sims and Reynolds committed perjury when they testified that Petitioner confessed to the crimes, both orally and in writing. The sole evidence for Petitioner's claim is the opinion of Ms. Lord, his forensic handwriting expert, who claims that the first handwritten statement offered by the prosecution at trial was not written by Petitioner.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the

prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000). A habeas petitioner has the burden of establishing a *Giglio* violation. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003).

In order to establish that testimony was falsely given, it is not enough for a defendant to simply show that the allegedly false testimony has been challenged by another witness. *See United States v. Brown*, 634 F. 2d 819, 827 (5th Cir. 1981). Nor would the fact that the police officers' testimony conflicts with a defense expert's testimony establish that the officers committed perjury either. *See U.S. v. Bortnovsky,* 879 F. 2d 30, 33 (2nd Cir. 1989). Finally, as discussed by the Court when addressing Petitioner's first ineffective assistance of counsel claim above, Ms. Lord's evidence, at best, would have only called into question the issue of whether it was Petitioner or Officer Sims who had written Petitioner's first written confession, but would not necessarily have established that Officer Sims or Officer Reynolds testified falsely about

14

Petitioner's first oral confession, or the second confession which he made to Officer Reynolds. Petitioner is therefore not entitled to habeas relief on his second claim.

### C. Claim # 3. The right to testify claim.

In his final claim, Petitioner contends that the trial court erred in failing to ascertain on the record whether Petitioner knowingly and intelligently waived his right to testify.

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000). A trial court has no duty to inquire *sua sponte* whether a defendant knowingly, voluntarily, or intelligently waives his right to testify. *United States v. Webber*, 208 F. 3d 545, 551-52 (6th Cir. 2000). In addition, a state trial judge is not constitutionally required to specifically address a criminal defendant and both explain that he has a right to testify and ask him whether he wishes to waive that right. *Siciliano v. Vose*, 834 F. 2d 29, 30 (1st Cir. 1987); *See also Liegakos v. Cooke,* 106 F. 3d 1381, 1386 (7th Cir. 1997). Waiver of the right to testify may be inferred from a defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Webber,* 208 F. 3d at 551. Here, Petitioner did not alert the trial court at the time of trial that he wanted to testify. Thus, his failure to do so constitutes a waiver of this right. *Id.* In fact, Petitioner indicated on the record that he agreed with his counsel's statement that he did not wish to testify at trial. Because the record is void of any indication by Petitioner that he disagreed with counsel's advice that he should not testify, Petitioner

15

has not overcome the presumption that he willingly agreed to counsel's advice not to testify. *Gonzales,* 233 F. 3d at 357.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to Petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

The Court will deny Petitioner a Certificate of Appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.  Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable or that he should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although this Court will deny a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

## IV.   ORDER

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **GRANTED** leave to appeal *in forma pauperis.*

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  November 28, 2006

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record and pro se petitioner by electronic means or U.S. Mail on November 28, 2006.<br><br>S/Carol A. Pinegar<br>Deputy Clerk |